IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| CYNTHIA SANTIAGO, | : | CIVIL ACTION |
| | : | NO. 13-5411 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SEPTA, et al., | : | |
| | : | |
| Defendants. | : | |


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    May 15, 2015


        Plaintiff Cynthia Santiago ("Plaintiff") brings this
action against her employer, the Southeastern Pennsylvania
Transportation Authority ("SEPTA"), and her former boss, Vandyke
Rowell. Plaintiff alleges that for many years, Rowell sexually
harassed her. She makes claims of hostile work environment and
quid pro quo sexual harassment under both Title VII and the
Pennsylvania Human Relations Act, as well as a 42 U.S.C. § 1983
claim against SEPTA. SEPTA has moved for summary judgment on the
claims against itself. For the reasons that follow, the Court
will deny the motion in part and grant the motion in part.

## I.   BACKGROUND[1]

Plaintiff is a female Lieutenant in SEPTA's Transit Police Department, where she has worked since 1989. Pl.'s Statement Undisputed Material Facts ¶ 1, ECF No. 51. In or around 1992, Plaintiff began reporting to Vandyke Rowell. By 1994, Rowell started making sexual comments to Plaintiff, including verbal solicitations for sex. Id. ¶¶ 2, 3. In 1993 or 1994, when Plaintiff and Rowell were in a vehicle together for work-related purposes, he climbed on top of her, groping and kissing her. Id. ¶ 4; Santiago Dep. 62:3-65:23, July 3, 2014, Pl.'s Resp. Ex. 1, ECF No. 51-3 [hereinafter Santiago Dep.]. Plaintiff told Rowell that she wanted to report this incident, but he told her that if she did so, she "would no longer have a job." Id. at 49:1-9.

Rowell continued to make physical sexual advances on Plaintiff until approximately 1995, when Plaintiff entered into a romantic relationship with another man and had a child. Pl.'s Statement Undisputed Material Facts ¶ 6; Santiago Dep. 66:3-68:16. Rowell continued to make verbal advances, however. Id. 66:24-67:13. In 1998, after the end of Plaintiff's relationship,

---

[1]   In accordance with the summary judgment standard, the facts are construed in the light most favorable to Plaintiff, as the nonmoving party. SEPTA disputes many of these facts, but notes that nearly all disputes are "not material or relevant to the issues before the Court" on the motion for summary judgment. Def. SEPTA's Resp. Pl.'s Statement Undisputed Facts, ECF No. 56.

Rowell's physical advances began again, including unwanted touching and groping, and nonconsensual sexual intercourse. Id. at 69:18-70:21. This conduct continued for a number of years. Pl.'s Statement Undisputed Material Facts ¶ 8.

Plaintiff was promoted to Lieutenant in 2007. Initially, she was assigned to work under Captain Steve Harold, but she was soon transferred to Zone 5, where Rowell was her direct supervisor. Santiago Dep. 102:19-105:8. Plaintiff requested that Rowell transfer her to a different zone, but he refused, telling her that he wanted her close to him. Email from Cynthia Santiago to Vandyke Rowell (Mar. 15, 2009, 12:15 AM), Pl.'s Resp. Ex. 4, ECF No. 51-8; Santiago Dep. 147:5-148:4.

Rowell continued the unwanted sexual advances. Plaintiff was afraid to report these incidents because Rowell warned her that she would lose her job and people would believe Rowell over her. Id. at 181:11-19. Additionally, Rowell responded to Plaintiff's attempts to end Rowell's unwanted advances by ignoring her at work and refusing to respond to her work-related emails. Id. at 265:1-266:17; Email from Cynthia Santiago to Vandyke Rowell (June 4, 2009, 9:11 PM), Pl.'s Resp. Ex. 6, ECF No. 51-8.

In August 2011, Plaintiff told Rowell that she would report him if he did not change his behavior. Santiago Dep. 324:10-18. Subsequently, on August 23, 2011, SEPTA received an

3

anonymous tip that a SEPTA vehicle was being used to transport Plaintiff to her personal residence. Pl.'s Statement Undisputed Material Facts ¶¶ 20, 21; SEPTA Mot. Summ. J. ¶ 12, ECF No. 50.

A few weeks later, in September or October 2011, Plaintiff filmed two sexual encounters between herself and Rowell in their offices at work. Santiago Dep. 164:1-173:23. Plaintiff later provided her phone – the device she used to film these encounters – to the Philadelphia Police Department, and they produced an extraction report.[2] See Extraction Report, SEPTA Mot. Summ. J Ex. 4, ECF No. 50-7 [hereinafter Extraction Report]. At some point shortly after October 12, 2011, when she was admitted to a hospital for stress, Compl. ¶ 41; Investigation Interview R. at 2, SEPTA Mot. Summ. J. Ex. 3, ECF No. 50-7 [hereinafter Investigation Interview Record], Plaintiff encountered Rowell and again told him that she was going to report him. Id.; Santiago Dep. 123:20-124:3. Rowell said something like, "We'll see about that." Id. at 324:18-24.

Roughly a week later, Rowell called Plaintiff and informed her that there was an investigation into the allegations regarding Plaintiff's use of SEPTA vehicles. Id. at 324:24-325:2. After Lieutenant John Arnold did some initial

---

[2]     The Extraction Report appears to summarize the technical information for the images contained on Plaintiff's phone, such as the dates and times when the images were created.

investigation and conducted an interview with Plaintiff, see
SEPTA Mot. Summ. J. Ex. 6, ECF No. 50-9, Rowell was assigned to
"see if there were any infractions, and if there were, take the
appropriate action," as well as to do further investigation, if
necessary, Rowell Dep. 91:1-14, Sept. 5, 2014, Pl.'s Resp. Ex.
3, ECF No. 51-7 [hereinafter Rowell Dep.]. Rowell interviewed
Plaintiff regarding this matter on December 29, 2011. See
Memorandum from Captain Vandyke Rowell to Chief Richard J. Evans
(Dec. 29, 2011), SEPTA Mot. Summ. J. Ex. 8, ECF No. 50-9. During
the interview, Plaintiff stated that she had done nothing her
supervisors were unaware of and that she believed she was being
singled out for investigation for personal reasons. Id.
Ultimately, Rowell determined that Plaintiff had violated
several SEPTA Procedure Directives by failing to properly
supervise; failing to comply with written or oral orders,
directives, rules, or regulations issued by a superior officer;
and using a patrol vehicle without authorization. He issued
Plaintiff an Official Written Reprimand, Memorandum from Captain
Vandyke Rowell to Lieutenant Cynthia Santiago (Dec. 29, 2011),
SEPTA Mot. Summ. J. Ex. 9, ECF No. 50-9, which was upheld on
appeal by Deputy Chief David Scott, Memorandum from Deputy Chief
David Scott to Lieutenant Cynthia Santiago (January 12, 2012),
SEPTA Mot. Summ. J. Ex. 11, ECF No. 50-10.

Plaintiff reported Rowell's behavior to SEPTA Chief

Richard Evans on or about January 17, 2012, and Chief Evans took
her to SEPTA's Equal Employment Opportunity ("EEO") office.
Santiago Dep. 8:18-24, July 15, 2014, Pl.'s Resp. Ex. 1, ECF No.
51-5 [hereinafter Santiago Dep. Part II]; Charge of
Discrimination, SEPTA Mot. Summ. J. Ex. 13, ECF No. 50-10
[hereinafter PHRC Complaint]. Subsequently, Chief Evans placed
both Rowell (on January 18, 2012), and Plaintiff (on January 24,
2012) on administrative leave pending the investigation of
Plaintiff's complaint. Evans Dep. 45:16-47:18, June 12, 2014,
Pl.'s Resp. Ex. 10, ECF No. 51-9 [hereinafter Evans Dep.].
Plaintiff remained on paid administrative leave for nearly a
year. Santiago Dep. Part II 18:15-20:10.

    After failing to reach a resolution with SEPTA's EEO
office, and learning of the need to file her claim with outside
agencies, Plaintiff filed a charge of discrimination with the
Pennsylvania Human Relations Commission ("PHRC") and the Equal
Employment Opportunity Commission ("EEOC") on July 24, 2012. See
PHRC Complaint.

    Plaintiff filed her Complaint in the instant case on
September 17, 2013, ECF No. 1, charging five counts: (1) hostile
work environment under Title VII, as to SEPTA; (2) hostile work
environment under the Pennsylvania Human Relations Act ("PHRA"),
as to both Defendants; (3) quid pro quo sexual harassment under
Title VII, as to SEPTA; (4) quid pro quo sexual harassment under

6

the PHRA, as to both Defendants; and (5) civil rights violations
under 42 U.S.C. § 1983, as to both Defendants. SEPTA filed an
answer (ECF No. 6), but Rowell did not. After the conclusion of
discovery, SEPTA filed a motion for summary judgment as to the
claims against SEPTA. ECF No. 50. Plaintiff responded (ECF No.
51), and SEPTA filed a reply (ECF No. 55). The motion is now
ripe for disposition.

## II.  LEGAL STANDARD

        Summary judgment is appropriate if there is no genuine
dispute as to any material fact and the moving party is entitled
to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion
for summary judgment will not be defeated by 'the mere
existence' of some disputed facts, but will be denied when there
is a genuine issue of material fact." Am. Eagle Outfitters v.
Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)). A
fact is "material" if proof of its existence or nonexistence
might affect the outcome of the litigation, and a dispute is
"genuine" if "the evidence is such that a reasonable jury could
return a verdict for the nonmoving party." Anderson, 477 U.S. at
248.

        The Court will view the facts in the light most
favorable to the nonmoving party. "After making all reasonable

inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth., 593 F.3d 265, 268 (3d Cir. 2010). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the nonmoving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)) (internal quotation marks omitted).

## III. DISCUSSION

### A.   Title VII Claims

SEPTA argues that Plaintiff's Title VII claims of hostile work environment and quid pro quo sexual harassment are barred by the applicable statute of limitations. In response, Plaintiff argues that her Title VII claims are saved by the continuing violation doctrine.

Before filing a civil suit under Title VII in federal court, a plaintiff must file a charge of employment discrimination with the EEOC. In Pennsylvania, this charge must be filed no later than 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). See also West v. Phila. Elec. Co., 45 F.3d 744, 754 (3d Cir. 1995), superseded on other grounds by Nat'l R.R. Passenger Corp. v.

Morgan, 536 U.S. 101 (2002); Brennan v. Nat'l Tel. Directory Corp., 850 F. Supp. 331, 337 (E.D. Pa. 1994). This 300-day statute of limitations period is subject to exceptions, including the continuing violation doctrine. "Under the continuing violation doctrine, discriminatory acts that are not individually actionable may be aggregated to make out a hostile work environment claim; such acts 'can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period.'" Mandel v. M & Q Packaging Corp., 706 F.3d 157, 165 (3d Cir. 2013) (quoting O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006)).

In this case, Plaintiff filed her charge of discrimination with the EEOC on July 24, 2012. Accordingly, in order for her claims to be timely under the continuing violation doctrine, at least one act must have occurred after September 27, 2011 – the first date outside the 300-day statute of limitations period.

SEPTA argues that the final alleged acts of discrimination were the two sexual encounters Plaintiff filmed in the fall of 2011, and claims that they took place on September 14, 2011. Under this theory, these two sexual encounters – the last, says SEPTA, in the alleged pattern of actions – fall outside the filing period, and so Plaintiff's claim is barred by the statute of limitations. However, SEPTA's

theory has two problems: first, the date of those two sexual encounters is not established, and second, SEPTA's framing of Plaintiff's claim – "nonconsensual sexual contact between Plaintiff and Rowell," SEPTA Mem. Law at 4, ECF No. 50 – is too limiting.

In support of its claim that Plaintiff filmed the sexual encounters on September 14, 2011, SEPTA has produced a single page from the Philadelphia Police Department's Extraction Report for Plaintiff's phone. See Extraction Report. The page contains nine black and white thumbnail images and information about the dates and times those images were created. There are handwritten arrows pointing to several images that were created on September 14, 2011.[3] Presumably, SEPTA is claiming that these particular images are the ones Plaintiff captured during her sexual encounters with Rowell. However, it is impossible to decipher the images from this particular report; they are little more than gray smudges. Without the original images – or at least clearer renderings of them – there is no way to know whether these particular thumbnails indeed represent what Plaintiff filmed the night that she claims Rowell made sexual advances upon her. Furthermore, because SEPTA provided only one

---

[3]     There is no indication whether the Philadelphia Police Department, counsel for SEPTA, or some other party drew these arrows.

page from the Extraction Report, the Court cannot examine other images captured on Plaintiff's phone in late September or early October – the range of dates during which Plaintiff believes these incidents occurred – in order to see whether these September 14 images must have been the ones at issue. For example, at the bottom of the excerpt from the Extraction Report are several images captured on October 2, 2011. As these images are equally indecipherable, in the light most favorable to Plaintiff, the Court cannot conclude that the sexual encounters at issue did not occur on October 2 – or some other date not represented on the single page of the Extraction Report provided to the Court on summary judgment.

Plaintiff testified that the incidents at issue occurred at the "[e]nd of September [or] beginning of October." Santiago Dep. 164:16. If they occurred on or after September 28, 2011, they were within the relevant filing period. Based on the evidence presented thus far – Plaintiff's deposition testimony and a single page from the Extraction Report – and construing it in the light most favorable to Plaintiff, there is a genuine issue of material fact as to whether these incidents occurred on September 14, 2011, as SEPTA believes, or some date on or after September 28, 2011.[4]

---

[4]      The Third Circuit has held, in the context of a motion to dismiss a Title VII claim, that where factual questions

Moreover, even if SEPTA is correct that these sexual encounters occurred on September 14, 2011, SEPTA is incorrect that no other incidents included in Plaintiff's claims occurred after that date.

To succeed on a hostile work environment claim, Plaintiff must establish: (1) that she "suffered intentional discrimination because of [her] sex," (2) that "the discrimination was severe or pervasive," (3) that she was "detrimentally affected" by the discrimination, (4) that "the discrimination would detrimentally affect a reasonable person in like circumstances," and (5) "the existence of <u>respondeat superior</u> liability." <u>Mandel</u>, 706 F.3d at 167. The Court "must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an

---

remain as to the running of the statute of limitations period, the legal issue cannot be decided before the necessary factual inquiries are undertaken. Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1392 (3d Cir. 1994). Likewise, in this case, where genuine issues of material fact remain, those issues must be resolved by the trier of fact before the issue of the statute of limitations can be resolved as a matter of law. That is, the factual question of when particular events happened must be decided before it can be determined whether those events render the claim timely or untimely. Cf. <u>Van Buskirk v. Carey Canadian Mines, Ltd.</u>, 760 F.2d 481, 498 (3d Cir. 1985) ("[T]he applicability of the statute of limitations usually involves questions of fact for the jury.") (discussing the Pennsylvania discovery rule).

employee's work performance.'" Id. at 168 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)).[5]

Considering the events Plaintiff has alleged "as a whole," Mandel, 706 F.3d at 168, Plaintiff's hostile work environment claim does not consist exclusively of sexual advances. Rather, she also alleges that when she resisted such advances, Rowell made threats to her job and/or refused to communicate with her in a work capacity, thereby affecting her ability to do her job. Such behavior may form the basis of a quid pro quo sexual harassment claim if the threats are carried out, but they may also contribute to a hostile work environment claim. See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 753-54 (1998). In other words, there may be a quid pro quo component to a hostile work environment claim. See id. at 749; Bonenberger v. Plymouth Twp., 132 F.3d 20, 28 (3d Cir. 1997).

Here, Plaintiff has testified that at some point shortly after October 12, 2011, she had a conversation with Rowell in which she informed him that she was going to report his conduct, and he said something like, "We'll see about that."

---

[5]     SEPTA does not argue that Plaintiff has not proven or cannot prove any elements of either her hostile work environment claim or quid pro quo sexual harassment claim. Rather, SEPTA's sole argument on summary judgment is that the claims are untimely. Accordingly, the Court will consider the elements of these claims only to the extent necessary to analyze the proper scope of Plaintiff's claims, which determines whether the claims are timely.

Santiago Dep. 324:10-24; see also Investigation Interview Record at 3 (noting that in October, Plaintiff made it "very clear to [Rowell] that [she] was not going to take this anymore"). Taken in the light most favorable to Plaintiff, Rowell's alleged statement constituted a threat to her. Such threats are part of the pattern of action that form her hostile work environment claim, and any conduct in October 2011 undisputedly falls within Plaintiff's filing period. Accordingly, Plaintiff's hostile work environment claim is timely.

Similarly, SEPTA misapprehends the nature of Plaintiff's quid pro quo claim. SEPTA claims that the January 4, 2012, Official Written Reprimand – which falls within the filing period – is "unrelated to the conduct comprising Plaintiff's . . . quid pro quo sexual harassment claim[]," and therefore cannot be part of the pattern of harassment underlying Plaintiff's continuing violation theory. SEPTA Mot. Summ. J. at 6. SEPTA goes on to argue that "there is no record evidence of any contact between Rowell and Plaintiff during November and December suggesting a pattern or connection between the alleged earlier harassment and the Written Reprimand." Id. at 7. In fact, though, Plaintiff does not need the continuing violation theory to save her quid pro quo harassment claim, because events that are central to her claim occurred within the filing period.

14

In order to prove her claim for quid pro quo sexual
harassment, Plaintiff must show that: (1) submission to the
unwanted sexual conduct was "made either explicitly or
implicitly a term or condition" of her employment, or
(2) "submission to or rejection of such conduct" was "used as
the basis for employment decisions" affecting Plaintiff.
Bonenberger, 132 F.3d at 27. A claim involving "only unfulfilled
threats" is a hostile work environment claim, not a quid pro quo
claim. See Ellerth, 524 U.S. at 754.

Given that standard and under these facts, the basis
of Plaintiff's quid pro quo claim is, necessarily, her belief
that her rejection of Rowell's sexual advances – and her threat
to report him – led or contributed to his decision to issue her
an Official Written Reprimand in December 2011 (within the
filing period). Under this theory, the most critical facts –
construed in the light most favorable to the Plaintiff – are as
follows: When Plaintiff told Rowell for the final time that she
was going to report his conduct, he said something like, "We'll
see about that." Rowell contacted her about the investigation
involving her shortly thereafter (which, like "We'll see about
that," could be taken as a threat). He was given the power to
determine whether Plaintiff had committed any infractions and to
take appropriate action, as well as to investigate further, if
necessary. Ultimately, Rowell did take action against Plaintiff.

The fact that Rowell did not initiate the investigation[6] and was not the only individual involved in the investigation do not negate the fact that he had power to take employment action against Plaintiff – and that he _did_ take action, which given his prior threats, might have been the result of Plaintiff's rejection of Rowell's advances and expressed intention to report his conduct. Nor is it particularly relevant, as SEPTA suggests, that two months passed between "We'll see about that" and the Official Written Reprimand, as the threats Plaintiff perceived could have been carried out after two months just as easily as after two days or two weeks. What _is_ relevant for the purposes of SEPTA's motion is that a significant part of Plaintiff's quid pro quo harassment claim – Rowell's conduct during the investigation of Plaintiff – in fact lies firmly within the Title VII filing period, and so her claim is timely.

Therefore, the Court will deny the motion for summary judgment as to Counts 1 and 3 – Plaintiff's Title VII claims.

---

[6]     Unless, of course, Rowell himself made the anonymous tip, as Plaintiff believes is likely. See Pl.'s Mem. Law at 8, ECF No. 51-1 ("On August 23, 2011 an anonymous caller reported that a specific vehicle was being used to transport Santiago to her apartment building. It is difficult to believe that a member of the general public unaffiliated with SEPTA would view this as suspicious and make such a call to SEPTA." (citation omitted)). The tip was called in the same month – August 2011 – that Plaintiff says was one of the times she warned Rowell that she was going to report his conduct.

B.    <u>PHRA Claims</u>

Next, SEPTA argues that Plaintiff's PHRA claims of hostile work environment and quid pro quo sexual harassment are also barred by the applicable statute of limitations. In response, Plaintiff argues that equitable tolling should apply.

A plaintiff alleging unlawful discrimination under the Pennsylvania Human Relations Act must file a complaint "within one hundred eighty days after the alleged act of discrimination." 43 Pa. Cons. Stat. § 959(h). This time limit, however, is "subject to waiver, estoppel and equitable tolling." <u>Id.</u> § 962(e). Generally, equitable tolling may be appropriate in three nonexclusive situations: "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." <u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1387 (3d Cir. 1994); <u>see also</u> <u>Kellam v. Independence Charter Sch.</u>, 735 F. Supp. 2d 248, 255 (E.D. Pa. 2010). The Third Circuit has emphasized that the purpose of equitable tolling is to prevent a party from "benefit[ting] from his or her own wrongdoing." <u>Oshiver</u>, 38 F.3d at 1392.

In this case, none of the facts Plaintiff alleges as part of her claims occurred within her 180-day PHRA filing

17

period, so these claims appear to be untimely. Nevertheless, Plaintiff argues that her filing period should be equitably tolled because she promptly asserted her rights with SEPTA's EEO office and was misled by their Director, Lorraine McKenzie, who told her that she could file a charge with the EEOC and PHRC if she wanted to, without explaining the consequences of not filing a charge with those agencies. Pl.'s Mem. Law at 10.

The critical question, therefore, is whether McKenzie "actively misled" Plaintiff by telling her that she could file a claim with the EEOC and PHRC if she wanted to and by failing to explain to her the consequences of not filing such a claim. The issue would be simpler if McKenzie had told Plaintiff that she did not <u>need</u> to file a charge with the EEOC and PHRC – that statement would be clearly misleading. As it is, the information McKenzie allegedly gave Plaintiff is perhaps best characterized as a misrepresentation of omission – that is, McKenzie told Plaintiff that she <u>could</u> file, which was true, but did not tell her the critical detail that she <u>must</u> file if she wanted to preserve her statutory rights. Regardless, viewing these facts in the light most favorable to Plaintiff, a reasonable jury could find that McKenzie's statement – though less active than other misleading statements might have been – was indeed a misrepresentation that directly led Plaintiff to believe she had no need to file a claim with outside agencies. Notably, as

18

Director of SEPTA's EEO office, McKenzie would certainly know of
the consequences of not filing a charge with the outside
agencies. That is, she would know that if Plaintiff wished to
preserve her rights, filing with those agencies was not merely
an optional step. While perhaps McKenzie had no duty to provide
advice to Plaintiff concerning the preservation of her claims,
once she undertook to do so, she had the obligation not to lead
Plaintiff astray. And drawing inferences in favor of Plaintiff,
McKenzie's choice of words – "if you want to" – clearly implied
that filing with the EEOC and PHRC was indeed nothing more than
optional. A reasonable jury could infer, therefore, that
McKenzie's statement actively misled Plaintiff, causing her to
believe she had no need to preserve her claims outside of
SEPTA's own process.

        This is not a case where a party has failed to act
diligently and is attempting to "invoke equitable principles to
excuse that lack of diligence." Baldwin Cnty. Welcome Ctr. v.
Brown, 466 U.S. 147, 151 (1984). To the contrary, Plaintiff was
actively asserting her rights with SEPTA's EEO office and, based
on what that office had told her, believed that what she was
doing was enough. If McKenzie had not implied to Plaintiff that
filing a charge with outside agencies was merely an option,
Plaintiff may have taken independent steps to preserve her

claims – just as she in fact did when she later learned of the necessity to file a charge outside SEPTA.

Altogether, therefore, it is a genuine issue of material fact whether SEPTA's EEO office actively misled Plaintiff,[7] and thus made her PHRA claims timely due to equitable tolling. The Court will deny the motion for summary judgment as to Plaintiff's PHRA claims.

C.   § 1983 Claim

Finally, SEPTA argues that Plaintiff's claim under § 1983 – that Defendants violated her equal protection rights under the Fourteenth Amendment – fails as a matter of law because Plaintiff has not established the elements of this claim. Plaintiff argues in response that there are genuine disputes of material fact as to those elements.

As a government entity, SEPTA "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Rather, municipal liability for torts committed by

---

[7]        Under Pennsylvania law – where this Court must look to analyze a state limitations period – "[w]hether the statute has run on a claim is usually a question of law for the trial judge, but where the issue involves a factual determination, the determination is for the jury." Knopick v. Connelly, 639 F.3d 600, 606 (3d Cir. 2011) (quoting Foulke v. Dugan, 187 F. Supp. 2d 253, 258-59 (E.D. Pa. 2002)) (internal quotation marks omitted) (applying Pennsylvania law). Here, there are factual questions about what McKenzie said to Plaintiff, and whether what she said was misleading.

employees attaches under § 1983 in only three situations:[8] (1) when the "employee acted pursuant to a formal governmental policy or a standard operating procedure long accepted within the government entity;" (2) "when the individual has policy making authority rendering his or her behavior an act of official government policy;" and (3) "if an official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes." McGreevy v. Stroup, 413 F.3d 359, 367 (3d Cir. 2005) (citing Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989); Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81 (1986); City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988)). A policymaker is an official with "final, unreviewable discretion to make a decision or take action." Kneipp v. Tedder, 95 F.3d 1199, 1213 (3d Cir. 1996). "The identification of officials who possess final policymaking authority with regard to a given act is an issue of state or local law," and "the determination as to who is a decisionmaker for the purposes of §

---

[8]        "Liability can also be imposed on a municipality based on its failure to train its employees if the plaintiff can show a pattern of violations or where that failure to train demonstrates deliberate indifference on the part of the municipality." Thomas v. Coopersmith, No. 11-7578, 2012 WL 3599415, at *7 n.5 (E.D. Pa. Aug. 21, 2012) (citing Berg v. Cnty. of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000)). However, Plaintiff does not argue that liability is based on failure to train, so the Court will address only the three McGreevy circumstances.

1983 liability is not a decision for the jury, but is for the court to decide as a matter of law." Dolly v. Borough of Yeadon, 428 F. Supp. 2d 278, 284 (E.D. Pa. 2006) (Robreno, J.) (citing Praprotnik, 485 U.S. at 131).

   Plaintiff argues that Rowell was a policymaker for SEPTA, such that his behavior was an "act of official government policy."[9] McGreevy, 413 F.3d at 367. But Plaintiff has not established that in his conduct alleged in this case, Rowell was making decisions or taking actions that were final and unreviewable. The mere fact that Rowell was a supervisor and had supervisory discretion is irrelevant unless he used that discretion to establish policy – and Plaintiff has not shown that he did. See Pembauer, 475 U.S. at 481-82 ("The fact that a particular official – even a policymaking official – has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion."). Plaintiff points out a number of

---

[9]      Plaintiff does not argue that Rowell acted pursuant to any formal SEPTA policy or standard operating procedure. She does argue that there is a genuine dispute of material fact about whether Chief Evans ratified Rowell's conduct, but that argument is unavailing: it is true that there is a genuine dispute of fact about whether Evans knew that Rowell and Plaintiff were in a sexual relationship, but that dispute is not material, as there is no record evidence that Evans (or any other SEPTA employee, other than Rowell and Plaintiff) knew that the relationship was nonconsensual. Accordingly, the only possible basis for § 1983 liability here is if Rowell had policymaking authority for SEPTA.

areas where Rowell had the authority to make decisions, but has
failed to establish that Rowell was the final policymaker with
regard to any of them. And, as Plaintiff herself notes, Rowell
was subordinate to several other officers. Cf. Middleton v.
Deblasis, 844 F. Supp. 2d 556, 568 (E.D. Pa. 2011) ("The fact
that there was a commanding officer whose job it was to oversee
[the defendants] evidences the fact that they do not have final
policy-making authority.").

Most notable is Rowell's Official Written Reprimand,
which was not in fact the final word on Plaintiff's discipline,
but was subject to review by Deputy Chief David Scott. Plaintiff
points out that in McGreevy, the Third Circuit determined that
although the school board could review the rating given to the
plaintiff (a teacher) by the superintendent, the superintendent
was still the final policymaker with respect to ratings. See 413
F.3d at 368-69. But that decision relied on the fact that
despite the availability of the appeals process, state law made
clear that the superintendent was the final policymaker when it
came to teacher ratings. Id.

In this case, Deputy Chief David Scott's memorandum
upholding Rowell's Official Written Reprimand makes clear that
Scott was the final policymaker, not Rowell: "This decision is
considered final and binding, and not subject to further
appeal." Memorandum from Deputy Chief David Scott to Lieutenant

23

Cynthia Santiago (January 12, 2012), SEPTA Mot. Summ. J. Ex. 11.
In the absence of any state or local law providing that the
original issuer of a written reprimand is the policymaker with
respect to that decision, see McGreevy, 413 F.3d at 368-69,
Rowell did not make a final, unreviewable decision in this case,
and so he was not the policymaker. Accordingly, Plaintiff has
failed to establish a basis for § 1983 liability here, and the
Court will grant the motion for summary judgment as to
Plaintiff's § 1983 claim only.

**IV.  CONCLUSION**

For the foregoing reasons, the Court will grant
SEPTA's motion for summary judgment as to Plaintiff's § 1983
claim, but deny the motion as to the remaining claims. An
appropriate order follows.